UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

EMMA JACKSON HOLMES                                                              PLAINTIFF

V.                                                         CIVIL ACTION NO. 3:22-CV-48-KHJ-MTP

MISSISSIPPI DEPARTMENT OF                                                      DEFENDANTS
CORRECTIONS, et al.

ORDER

Before the Court is Defendants Pelicia Hall and Jeworski Mallett's [32] Motion for Summary Judgment. The Court grants the motion in part and denies it in part for the following reasons.

I.     Background

This case arises from Plaintiff Emma Holmes's claim that the Mississippi Department of Corrections ("MDOC") wrongfully detained her for longer than her sentence. *See* Mem. Supp. Pl.'s Resp. [36] at 3. On January 30, 1989, a grand jury indicted Holmes in Grenada County, Mississippi, for the sale of a controlled substance. Am. Compl. [28] ¶ 14. Holmes alleges the Grenada County Sheriff's Office arrested her for that crime on March 13, 1989, and she remained in jail until she bonded out on July 24, 1989. *Id.* ¶ 15. She claims the Sheriff's Office detained her again on January 3, 1990, and she remained in their custody until her trial. *See*

*id.* ¶ 16; [36] at 1–2. After a jury found her guilty, the Grenada County Circuit Court sentenced her to 30 years in MDOC custody.[1] [28] ¶ 17; [37-5].

After her sentencing, MDOC received a report from the Grenada County Circuit Clerk showing that Holmes had only been detained since April 21, 1990. [28] ¶ 18; [37-5]. That report did not include Holmes's alleged confinement from March 13 to July 24, 1989, or from January 3 to April 20, 1990. *See id.* Based on that report, MDOC credited Holmes 300 days toward her sentence, setting a tentative discharge date of April 21, 2020. [28] ¶ 19; [32-2] at 1.

Holmes further alleges that, in October 2009, MDOC "stamped [as] received" a "jail time allotment sheet" from the Grenada County Sheriff's Office detailing her confinement before April 21, 1990. [28] ¶ 20. In June 2016, Holmes contacted MDOC's Records Department about her jail time credit and gave them a copy of the jail time allotment sheet. Mem. Supp. Defs.' Mot. [33] at 2; [36] at 2. She told MDOC that she was missing credit for her confinement before April 21, 1990. [36] at 2. MDOC contacted the Grenada County Sheriff's Office to verify Holmes's claim, but Linda Evans from the Sheriff's Office responded that she could not locate Holmes's records and thought they might have been destroyed. [28] ¶ 21; [32-3].

On March 20, 2017, Holmes filed an administrative remedy request with MDOC, again asking for her missing credit. [28] ¶ 22. MDOC rejected that request as untimely. [28] ¶ 22. In January 2018, Holmes sent a letter about her missing

---

[1] Holmes's Amended Complaint states that she was sentenced on February 20, 1991. [28] ¶ 17. But the record shows that she was sentenced on February 15. *See, e.g.,* [28] at 17; [37-5]. Because Holmes's exact sentencing date is immaterial to her claims, the Court uses the date from the record.

2

credit along with a copy of her jail allotment sheet to Pelicia Hall. [28] ¶ 23; [37-7]. One of Hall's subordinates responded that Holmes's jail allotment sheet did not match MDOC's records and that MDOC had addressed the issue when it contacted the Grenada County Sheriff's Office in June 2016. *See* [28] ¶ 24; [37-8]. In October 2019, Holmes submitted a final administrative request regarding her missing jail time credit, but MDOC did not process the request because the "matter ha[d] already been rejected." [28] at 25; *see also* [28] ¶¶ 24–26.

Holmes was released from prison on April 13, 2020. [28] ¶ 27. She alleges that if MDOC had given her credit for her incarceration before April 21, 1990, she would have served 10,958 days in prison. [36] at 3. But because MDOC did not include that time, she was incarcerated for 11,193 days—235 days longer than her sentence. *Id.*; [28] ¶ 28.

After her release, Holmes sued Hall and Jeworski Mallett in their individual and official capacities.[2] *See* [28]. Hall was the Commissioner for MDOC from 2017 to 2019, and Mallett was the Director of Records from 2013 to 2020. *Id.* ¶¶ 10–11. Holmes brings her claim pursuant to 42 U.S.C. § 1983, alleging that her over-detention violated her rights under the Fourteenth Amendment's Due Process Clause. *Id.* ¶ 53. She alleges that Hall and Mallett were deliberately indifferent in failing to adopt policies and procedures to prevent her over-detention and failing to adequately train and supervise MDOC staff to prevent her over-detention. *Id.* ¶¶

---

[2] Holmes filed her first Complaint pro se on February 1, 2022. *See* [1]. Along with Hall and Mallett, she named MDOC and several other parties as Defendants. *See id.* Holmes later obtained counsel and filed her Amended Complaint. *See* [23]; [28]. Hall and Mallett are the only two named Defendants in that Complaint. *See* [28] ¶¶ 10–11.

36–43. She also claims that Hall and Mallett are directly responsible for her over-detention because they were aware of the risk of her over-detention but did nothing about it. *See id.* ¶¶ 39, 43. She seeks monetary damages, including lost wages, attorney's fees, and punitive damages. *Id.* ¶¶ 56–59.

II. Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if, under the applicable substantive law, 'its resolution could affect the outcome of the action.'" *Patel v. Tex. Tech Univ.*, 941 F.3d 743, 747 (5th Cir. 2019) (quoting *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010)). "An issue is 'genuine' if 'the evidence is such that a reasonable [factfinder] could return a verdict for the nonmoving party.'" *Jones v. United States*, 936 F.3d 318, 321 (5th Cir. 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). All facts are construed in the non-movant's favor. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

III. Analysis

Hall and Mallett move for summary judgment on four grounds: (1) *Heck v. Humphrey*, 512 U.S. 477 (1994) bars Holmes's § 1983 claim; (2) Mississippi's three-year statute of limitations bars Holmes's claim; (3) sovereign immunity precludes Holmes's official capacity claims; and (4) Hall and Mallett are entitled to qualified immunity as to Holmes's individual capacity claims. *See* [33] at 6–11.

4

A. *Heck v. Humphrey*

Hall and Mallett first argue that *Heck v. Humphrey* bars Holmes's § 1983 claim. 512 U.S. 477 (1994). They contend that because Holmes's claim is tied to her sentence calculation, it would invalidate the duration of her incarceration. [33] at 6 (citing *Colvin v. LeBlanc*, 2 F.4th 494, 499 (5th Cir. 2021)). Holmes counters that *Heck* does not bar her claim because she does not challenge her underlying conviction or the validity of her sentence. [36] at 10. Rather, she alleges only that she was held longer than her valid sentence. *See id.* at 8–10 (citing *Crittindon v. LeBlanc*, 37 F.4th 177 (5th Cir. 2022)).

Holmes is correct. Under *Heck*, "a state prisoner seeking monetary damages cannot proceed under § 1983 if success on those claims would 'necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement.'" *Colvin*, 2 F.4th at 497 (quoting *Heck*, 512 U.S. at 486–87). But "[t]he *Heck* defense 'is not . . . implicated by a prisoner's challenge that threatens no consequence for his conviction or the duration of his sentence.'" *Crittindon*, 37 F.4th at 190 (quoting *Muhammad v. Close*, 540 U.S. 749, 751 (2004)), *petition for cert. filed sub nom. LeBlanc v. Crittindon*, No. 22-1171 (U.S. May 31, 2023). Accordingly, a challenge based exclusively on the actions and procedures that led to a prisoner's over-detention for an unchallenged conviction or sentence does not implicate *Heck*. *Hicks v. Dep't of Pub. Safety & Corr.*, 595 F. Supp. 3d 463, 472 (M.D. La. 2022); *McNeal v. La. Dep't of Pub. Safety & Corr.*, No. 18-736, 2020 WL 798321, at *9–10 (M.D. La. Feb. 18, 2020); *Traweek v. Gusman*, 414 F. Supp. 3d 847, 858–60 (E.D. La. 2019).

5

Indeed, Holmes does not challenge her conviction or sentence; she challenges the procedures and actions that led to her over-detention. In attempting to apply *Heck* to Holmes's case, Hall and Mallett "emphasize form over substance, begin from a faulty assumption, and ignore a critical component of *Heck* that is absent here." *Traweek*, 414 F. Supp. 3d at 859. In *Heck*, the Supreme Court held that a plaintiff could not bring a § 1983 claim if it would "render a conviction or sentence invalid." *Heck*, 512 U.S. at 486. It reasoned that allowing such claims would "permit a collateral attack on the conviction through the vehicle of a civil suit." *Id.* at 484. That is not the case here because Holmes's success in this action would not invalidate her conviction or 30-year sentence. *See Traweek*, 414 F. Supp. 3d at 859.

The constitutional violation Holmes advances is that she was imprisoned for 235 days *after* the expiration of her admittedly valid sentence; she "does not take issue with [her] criminal judgment of conviction or the sentence rendered." *Id.* "Therefore, the reasoning underlying *Heck*'s favorable termination prerequisite is simply not implicated." *Id. Heck* does not apply in this case.

  B. Statute of Limitations

Hall and Mallett argue that the statute of limitations bars Holmes's claim. They contend the statute of limitations started to run when Holmes received the jail time allotment sheet in 2009 because she then "knew or had reason to know that her sentence was not calculated properly." [33] at 7. Holmes counters that the statute of limitations started to run either on August 22, 2019—the date she alleges

6

she should have been released—or April 13, 2020—the date she was released. [36] at 12.

There is no federally prescribed statute of limitation for § 1983 claims. *Heilman v. City of Beaumont*, 638 F. App'x 363, 366 (5th Cir. 2016). "Instead, 'the statute of limitations . . . is determined by the general statute of limitations governing personal injuries in the forum state.'" *Id.* (quoting *Piotrowski v. City of Hous.*, 237 F.3d 567, 576 (5th Cir. 2001)). "The applicable Mississippi statute of limitations period is three years." *Whittington v. City of McComb*, No. 5:15-CV-52, 2016 WL 8223427, at *3 (S.D. Miss. Nov. 23, 2016) (citing *Gates v. Walker*, 865 F. Supp. 1222, 1230 (S.D. Miss. 1994)), *report and recommendation adopted*, 2017 WL 520558 (S.D. Miss. Feb. 8, 2017); *see also* Miss. Code Ann. § 15-1-49(1). "Federal law governs when a cause of action under § 1983 accrues." *Redburn v. City of Victoria*, 898 F.3d 486, 496 (5th Cir. 2018). Generally, "[t]he limitations period begins to run when the plaintiff 'becomes aware that he has suffered an injury or has sufficient information to know that he has been injured.'" *Id.* (quoting *Piotrowski*, 51 F.3d at 516). The Supreme Court, however, has noted that there is a "refinement to be considered" in § 1983 claims akin to state-law claims for false imprisonment. *See Wallace v. Kato*, 549 U.S. 384, 387–89 (2007).[3] Such claims do not accrue until the

---

[3] *Wallace* involved a plaintiff suing police officers for his unlawful arrest in violation of the Fourth Amendment. 549 U.S. at 386–87. The Supreme Court analogized his claim to one for false imprisonment. *See id.* at 388–89. Although Holmes is suing Defendants for her unlawful detention in violation of the Fourteenth Amendment, the analogy is the same. *See id.* (citation omitted) ("False arrest and false imprisonment overlap . . . . 'Every confinement of the person is an imprisonment, whether it be in a common prison or in a private house . . . .'").

7

plaintiff's false imprisonment ends. *Id.* at 389. That rule is "dictated . . . by the reality that the victim may not be able to sue while he is still imprisoned." *Id.*

The statute of limitations does not bar Holmes's claim because she did not suffer an injury until she was supposed to be released on August 22, 2019. Although she knew MDOC had miscalculated her jail time credit as early as 2009, no injury existed until MDOC held her past the end of her sentence. Then, her false imprisonment continued until she was released from prison on April 13, 2020. No matter which of these two dates the Court uses, Holmes filed her first complaint on February 1, 2022, well within Mississippi's three-year statute of limitations.

### C. Sovereign Immunity

Hall and Mallett correctly argue that sovereign immunity bars Holmes's claims against them in their official capacity. "[T]he Eleventh Amendment and general principles of sovereign immunity prohibit federal courts from hearing certain lawsuits against the states." *Turnage v. Britton*, 29 F.4th 232, 239 (5th Cir. 2022) (citation omitted). But that immunity is not absolute. *Id.* (citing *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019)). "It does not apply when the state consents to suit or when Congress abrogates the state's immunity." *Turnage*, 29 F.4th at 239. "Congress has not abrogated the states' immunity from section 1983 claims[,] and Mississippi has not consented to suit," so Holmes's official capacity claims can only survive if they fall within the narrow exception found in *Ex parte Young*, 209 U.S. 123 (1908). *Id.* The *Young* exception to state sovereign immunity

applies only if, among other things, the complaint seeks prospective relief. *See Turnage*, 29 F.4th at 239 (discussing the three requirements for *Young* to apply).

Holmes's official capacity claims fail because she does not seek prospective relief. *See* [28] at 11–12. Instead, she seeks only compensatory damages, punitive damages, attorney's fees, and interest. *Id.* Holmes concedes that she "did not specifically request injunctive relief in her complaint or amended complaint"; nevertheless, she contends that the Court should not dismiss her official capacity claims because she might seek leave to amend her complaint and include such relief. [36] at 13. The Court finds that argument unpersuasive. The *Young* exception requires a "straightforward inquiry into whether [the] complaint . . . seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (citation omitted). The Court cannot make that inquiry for a hypothetical future complaint. The Court grants Defendants' Motion for Summary Judgment as to the official capacity claims against them.

### D.  Qualified Immunity

Finally, Hall and Mallett argue that Holmes's individual capacity claims should be dismissed because they are entitled to qualified immunity. [33] at 11–19. Holmes counters that summary judgment is premature because discovery is incomplete, and she needs additional discovery to respond to Defendants' qualified immunity assertion. [36] at 4–6; [37-1] at 2. Defendants did not respond to this argument in their reply. *See* [39].

9

"If a nonmovant shows by affidavit or declaration that . . . it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to . . . take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). "Rule 56(d) motions . . . are 'broadly favored and should be liberally granted.'" *Am. Fam. Life Assurance Co. of Columbus v. Biles*, 714 F.3d 887, 894 (5th Cir. 2013) (per curiam) (quoting *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010)). The nonmovant, however, "may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts." *Am. Fam. Life Assurance Co. of Columbus*, 714 F.3d at 894 (citation omitted). Rather. the nonmovant must "set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion." *Id.* (citation omitted).

Courts must be even more careful when they defer ruling on a motion for summary judgment based on qualified immunity. *See Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012). Such caution is necessary because "[o]ne of the most salient benefits of qualified immunity is protection from pretrial discovery, which is costly, time-consuming, and intrusive." *Id.* (citation omitted). The Fifth Circuit "has established a careful procedure under which a district court may defer its qualified immunity ruling if further factual development is necessary to ascertain the availability of that defense." *Id.* "[A] district court must first find 'that the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified

10

immunity.'" *Id.* (quoting *Wicks v. Miss. State Emp't Servs.*, 41 F.3d 991, 994 (5th Cir. 1995)). "After the district court finds a plaintiff has so pled, . . . it may issue a discovery order 'narrowly tailored to uncover only those facts needed to rule on the immunity claim.'" *Id.* (quoting *Lion Boulos v. Wilson*, 834 F.2d 504, 507–08 (5th Cir. 1987)).

Holmes argues that more discovery is needed to determine whether Defendants acted with deliberate indifference in holding Holmes past her sentence. [36] at 6. Holmes's attorney submitted an affidavit stating the specific discovery he needs to oppose Defendants' motion. *See* [37-1]. He requests:

(1) The deposition of Defendants to establish their knowledge concerning Holmes's risk of over-detention, the policies and procedures used to avoid over-detention, and the extent of their subordinates' training and supervision;

(2) The deposition of Linda Evans to establish the "completion of the Grenada County Sherriff's Office's detainee records . . . and the retention and transmittal of pretrial detention information to MDOC";

(3) Production of MDOC's policies and procedures throughout Holmes's incarceration to establish the internal policies and procedures regarding inmate data acquisition and data entry into MDOC's electronic record system;

(4) Production of "fax transmittal records" to Kemper County Correctional Facility to establish that the Grenada County Sheriff's Office transmitted the jail allotment sheet to MDOC;

(5) Review of Grenada County Sheriff's Office booking records regarding Holmes to establish and confirm the total length of Holmes's pre-trial detention.

11

*Id.* ¶ 9. He elaborates how each request will likely create a genuine issue of material fact. *See id.*

The Court agrees that discovery related to qualified immunity is appropriate. Holmes alleges that the Grenada County Sheriff's office "transmitted [the] jail time allotment sheet to MDOC, which was stamped received by MDOC Central Records," and she attached that sheet as an exhibit to her Amended Complaint. [28] ¶ 20; [28] at 17. She also alleges that she wrote a letter to Hall and provided her with a copy of the jail time allotment sheet. *Id.* ¶ 23. Finally, Holmes claims the "Defendants could have verified [her] pre-sentence jail time and applied said time to her incarceration calculation, but they did not." *Id.* ¶ 29. Yet Defendants barely address the jail time allotment sheet in their motion and provide no explanation as to when and why it was stamped received by MDOC. *See* [33] at 3 n.4 (acknowledging that "Holmes's request that her sentence be shortened was based on a jail time allotment sheet she claimed to have obtained from Grenada County in 2009"). Notably, the jail time allotment sheet—which Defendants attached to their motion—includes the heading "06/14/2016 . . . FAX . . . Grenada Jail Solutions." [32-3]. Defendants repeatedly refer to the "06/14/2016 . . . FAX . . . Grenada Jail Solutions" form indicating that Evans could not find the record, but they consign the June 2016 fax to a footnote. [32-3]; *see also* [29] ¶ 24; [33] at 2–4, 19; [39] at 4.

Considering the above, additional discovery may allow Holmes to show that Hall and Mallett acted with deliberate indifference in several ways: by failing to acknowledge the jail time allotment sheet, by failing to adopt policies or adequately

train employees to prevent over-detention, or by otherwise directly contributing to Holmes's incarceration for longer than her valid sentence. If she can produce evidence of the above, then Hall and Mallett are not entitled to qualified immunity. *See Crittindon*, 37 F.4th at 186–90.

Accordingly, the Court denies without prejudice Defendants' Motion for Summary Judgment as to the individual capacity claims. The parties have 60 days from this Order's entry to conduct discovery. The discovery should be narrowly tailored to the discovery requested by Holmes's lawyer in his affidavit and limited to the issue of qualified immunity. Defendants may reassert their Motion for Summary Judgment as to qualified immunity within 14 days of the close of discovery.

IV.   Conclusion

The Court has considered all arguments. Those not addressed would not have changed the outcome. For the reasons stated, Defendants' [32] Motion for Summary Judgment is GRANTED as to Holmes's official capacity claims but DENIED WITHOUT PREJUDICE as to her individual capacity claims.

SO ORDERED AND ADJUDGED this 1st day of September, 2023.

s/ *Kristi H. Johnson*
UNITED STATES DISTRICT JUDGE