UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

EMMA JACKSON HOLMES                                                         PLAINTIFF

V.                                              CIVIL ACTION NO. 3:22-CV-48-KHJ-MTP

COMMISSIONER PELICIA HALL, et al.                                          DEFENDANTS

ORDER

Before the Court is Defendants Pelicia Hall and Jeworski Mallett's [55]

Motion for Summary Judgment. The Court grants the motion.

I.      Background

This suit arises from Plaintiff Emma Holmes's months-long overdetention.

In January 1989, a grand jury indicted Holmes for selling cocaine. Indictment

[57-1]. She was detained at Grenada County Jail from March 13 to July 24, 1989.

*See* Jail Time Allotment Sheet [57-2]. After those 133 days, she bonded out. *Id.*

Holmes returned to Grenada County Jail on January 3, 1990. *Id.* About a

year later, a jury found her guilty of selling cocaine. *See* J. [57-3]. A judge then

sentenced Holmes as a habitual offender to 30 years in the custody of the

Mississippi Department of Corrections (MDOC). *Id.* Holmes left Grenada County

Jail on March 27, 1991, after 448 additional days of detention. [57-2].

All told, then, Holmes spent nearly 600 days in jail before entering MDOC

custody. *Id.* But the Grenada County Circuit Clerk told MDOC otherwise. After

Holmes's sentencing, the clerk sent MDOC a notice of criminal disposition,

certifying that Holmes was detained for about 300 days. Sent'g Doc. [57-4]. MDOC

thus gave Holmes just 300 days of jail time credit. Inmate Time Sheet [57-8].

In October 2009, someone at Grenada County Jail completed and notarized a

"Jail Time Allotment" sheet. [57-2]. That sheet stated that Holmes served almost

600 days in jail, as discussed above. *Id.* But the sheet was not an official, MDOC-

approved form. *See id.*; MDOC Jail Time Form [57-5]; Mallett Dep. [57-10] at 19–20.

Grenada County Jail faxed the "Jail Time Allotment" sheet to the regional jail

where MDOC was housing Holmes. *See* [57-2]; Hall Dep. [57-11] at 84 (explaining

that MDOC contracted with various regional jails to house state inmates). There is

no evidence that the regional jail gave the sheet to MDOC at that time. *See* [57-2];

[57-10] at 63 ("MDOC never received this document from Ms. Holmes until 2016.").

Holmes followed up with MDOC in 2016—about seven years after receiving

the sheet. *See* [57-5]; Pl.'s Mem. [58] at 2. Sheretta Graham and Te'aria Ridge in

MDOC's Records Department then faxed Grenada County Jail an official, MDOC-

approved form. [57-5].[1] Graham and Ridge requested confirmation that Holmes

"was in jail there in 1988." *Id.*[2] An employee at Grenada County Jail responded that

she could not find Holmes's decades-old records, which she believed "may have

---

[1] Graham was a "loader"—someone who entered documents into MDOC's system. [57-10] at 17. Ridge was an auditor. *Id.*

[2] It is unclear why MDOC asked about 1988, [57-5], even though Holmes did not go to jail until 1989. [57-2]. The Court appreciates that, in a 2016 state-court filing, Holmes claimed that she was arrested in November 1988. Circuit Court Pet. [55-8] at 1. But at summary judgment, the Court declines to impute MDOC's error to Holmes.

be[en] destroyed." *Id.* So MDOC's Records Department did not give Holmes additional jail time credit.

Holmes followed up again with MDOC in 2018. Holmes Letter [57-6] at 1. She wrote a letter addressed to Pelicia Hall, who was MDOC's Commissioner. *Id.* Holmes's letter said:

> I would like to know if you can help me receive my jail time. I have tried sending a copy to the records dept. many times to no avail. I was given 300 days; however there are approximately 200 days missing. . . . I served from 3-13-89 to 7-24-89 and 1-30-90 to 4-21-90. I am enclosing a copy of my jail time allotment sheet and my time sheet.

*Id.* Michelle Taylor—whose title was "Projects Officer III, Special"—responded. Resp. to Inmate Correspondence [57-7]. Taylor's response explained:

> In your letter to the commissioner you stated that you're missing some jail time credit. The jail allotment sheet that you attached to your letter does not match the jail time that is in your court documents in our files. This issue was addressed with the Records Dept. on your behalf by Case[ M]anager Adrian Myes in June of 2016. An allotment sheet was faxed to Grenada Co. jail for them to complete to verify exactly what dates you spent in jail. The jail administrator sent us a note back stating that she did not find your jail records and that they may have been destroyed. We cannot post any[]more jail time credit to your file because of the dates not matching, and we cannot verify the dates.

*Id.* So Holmes remained incarcerated until April 2020. Discharge Certificate [57-9].

After her release, Holmes sued, raising overdetention claims under the Fourteenth Amendment's Due Process Clause. Am. Compl. [28] ¶¶ 44–54. She named two Defendants: (1) Pelicia Hall, who served as MDOC's Commissioner from 2017 to 2019; and (2) Jeworski Mallett, who served as MDOC's Director of Records

from 2013 to 2020. *Id.* ¶¶ 10–11; [57-10] at 6; [57-11] at 7.[3] Holmes sued each

Defendant in their official and individual capacities. [28] ¶¶ 10–11.

Hall and Mallett moved for summary judgment. [32]. The Court granted the

motion as to Holmes's official-capacity claims. Order [40] at 13. But the Court

denied the motion without prejudice as to Holmes's individual-capacity claims. *Id.*

The Court allowed Holmes to conduct narrowly tailored discovery, "limited to the

issue of qualified immunity." *Id.*

Hall and Mallett moved for summary judgment again, invoking qualified

immunity. [55]; Defs.' Mem. [56] at 6–13. Holmes responded that Hall and Mallett

violated her clearly established right to timely release. [58] at 8–15. Holmes

proceeded under three theories: that Hall and Mallett (1) failed to supervise and

train records staff, (2) failed to adopt adequate policies, and (3) directly participated

in the conduct that caused Holmes's overdetention. *Id.*

II.     Standard

Summary judgment is proper "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter

of law." Fed. R. Civ. P. 56(a). "A fact is material if it might affect the outcome of the

suit under the governing law, while a dispute about that fact is genuine if the

evidence is such that a reasonable jury could return a verdict for the nonmoving

party." *Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 824 (5th Cir. 2022) (cleaned

---

[3] Holmes first filed a pro se Complaint against nine named Defendants. Compl. [1]
¶¶ 5–15. Holmes then obtained counsel and filed an Amended Complaint, suing only Hall
and Mallett. [28] ¶¶ 10–11.

up). A movant is "entitled to a judgment as a matter of law when the nonmoving party has failed to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof." *Carnegie Techs., L.L.C. v. Triller, Inc.*, 39 F.4th 288, 293 (5th Cir. 2022) (cleaned up).

"A qualified immunity defense alters the usual summary judgment burden of proof." *Ford v. Anderson Cnty.*, 102 F.4th 292, 307 (5th Cir. 2024) (per curiam) (cleaned up). "To overcome an official's qualified immunity defense, a plaintiff must establish: (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Id.* (cleaned up). Put another way, a plaintiff "must rebut the defense by establishing a genuine dispute of material fact as to whether the official's allegedly wrongful conduct violated clearly established law." *Grisham v. Valenciano*, 93 F.4th 903, 907 (5th Cir. 2024) (cleaned up).

Courts must "view all the facts in the light most favorable to the non-moving party and draw all justifiable inferences in their favor." *Est. of Aguirre v. City of San Antonio*, 995 F.3d 395, 406 (5th Cir. 2021) (cleaned up). But "[c]onclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation will not survive summary judgment." *Batyukova v. Doege*, 994 F.3d 717, 724 (5th Cir. 2021) (cleaned up).

III.   Analysis

The narrow question before the Court is whether two former supervisory officials are entitled to qualified immunity. They are.

The Court's analysis starts—and ends—with prong one of qualified immunity. Holmes fails to show that either Defendant's own conduct violated the Constitution. The Court explains why below, addressing each of Holmes's theories in turn.

A.  Failure to Train or Supervise

Holmes first proceeds under a failure-to-train-or-supervise theory. [58] at 12–15. She argues that Defendants did not train records staff to (1) "independently verify pre-sentence jail time" or (2) "reconcil[e] two conflicting jail time allotment forms." *Id.* at 14–15. This theory fails because Holmes's evidence is insufficient to show deliberate indifference.

A supervisory official may be liable if "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Hicks v. LeBlanc*, 81 F.4th 497, 505 (5th Cir. 2023) (cleaned up).

The Court focuses on the third element, which is dispositive here. Deliberate indifference is a "stringent standard of fault," requiring proof that an official "disregarded a known or obvious consequence of his action." *Porter v. Epps*, 659 F.3d 440, 446–47 (5th Cir. 2011) (cleaned up). The official must have had "actual or constructive notice" that deficient training or supervision "cause[d] employees to violate citizens' constitutional rights." *Id.* at 447 (cleaned up). "Ordinarily, to show deliberate indifference, a plaintiff must point to a pattern of similar constitutional

violations by untrained employees." *McNeal v. LeBlanc*, 90 F.4th 425, 432 (5th. Cir. 2024) (per curiam) (cleaned up). "Constitutional violations must be very similar to jointly form a pattern." *Id.* (cleaned up).

Holmes's evidence fails to show deliberate indifference. She does not point to a "pattern of similar constitutional violations." *Id.* (cleaned up). In fact, she identifies no other instances of overdetention at MDOC. *See* [58]. For their part, neither Hall nor Mallett could recall any other allegations or instances of overdetention. [57-11] at 15–16, 38–39, 89; [57-10] at 44–45, 61; *see also Porter*, 659 F.3d at 447 (same).

Holmes's strongest argument cites Mallett's testimony that inmates would "sometimes . . . file grievances or write letters" about jail time credit. [57-10] at 17; *see also* [58] at 12, 14. But that testimony does not establish "actual or constructive notice" of constitutional violations. *Porter*, 659 F.3d at 447 (cleaned up). Holmes fails to show (1) how many inmates submitted grievances, (2) how many of those grievances had merit, or (3) how many meritorious grievances MDOC resolved before the inmate's release date.[4] Holmes may not rely on "speculation, improbable inferences, [and] unsubstantiated assertions" to fill in the evidentiary gap. *Batyukova*, 994 F.3d at 724 (cleaned up). Evidence that inmates "sometimes" filed grievances falls short of showing a "pattern of similar constitutional violations." *Compare* [57-10] at 17, *with McNeal*, 90 F.4th at 432 (cleaned up).

---

[4] Mallett explained that "every time" MDOC received a grievance or letter, MDOC would send "another [official verification form] to the jail." [57-10] at 17. He added that he "didn't have any knowledge of any other lawsuits or any other allegations of people being legitimately over-detained." *Id.* at 61.

At bottom, Holmes's evidence fails to satisfy the "stringent standard of fault" necessary to hold Hall or Mallett personally liable. *Porter*, 659 F.3d at 446–47 (cleaned up). No reasonable jury could conclude that either Defendant was deliberately indifferent.

### B.  Failure to Adopt Policies

Holmes's second theory is that Hall and Mallett failed to adopt adequate policies. [58] at 12–15. This theory, too, fails because Holmes's evidence is insufficient to show deliberate indifference.

The Fifth Circuit has set forth the applicable law:

> Supervisory officials may be liable under [Section] 1983 for their failure to adopt policies if that failure causally results in a constitutional injury. Liability only arises when the officials act, or fail to act, with deliberate indifference, a disregard for a known or obvious consequence of their actions. Plaintiffs must introduce evidence that each Defendant had actual or constructive notice that their failure to adopt policies would result in constitutional violations. This typically requires showing notice of a pattern of similar constitutional violations due to deficient policies, permitting the inference that Defendants deliberately chose policies causing violations of constitutional rights.

*Crittindon v. LeBlanc*, 37 F.4th 177, 186 (5th Cir. 2022) (cleaned up); *see also Porter*, 659 F.3d at 446–47.[5]

As discussed, Holmes's evidence fails to show deliberate indifference. *Supra* pp. 6–7. Her second theory therefore fails.

---

[5] The Court assumes that "failure to adopt policies" is a distinct theory of liability, rather than a different articulation of a failure-to-train-or-supervise theory. *See McNeal*, 90 F.4th at 438 (Duncan, J., concurring).

C.  Direct Participation

Holmes's final theory is that Defendants directly participated in her overdetention. *See* [58] at 14. This theory fails because Holmes presents no evidence of that participation.

"A supervisory official may be held liable if he affirmatively participates in the acts that cause the constitutional deprivation." *Crittindon*, 37 F.4th at 188 (cleaned up); *see also Hicks*, 81 F.4th at 504–05. "A plaintiff must show the defendant's deliberate indifference to [the] plaintiff's constitutional rights." *Crittindon*, 37 F.4th at 188. "This requires evidence that an official disregarded a known or obvious consequence of their actions." *Id.* (cleaned up).

Holmes's evidence fails to establish Hall or Mallett's direct participation. To be sure, Holmes argues that she "sent a letter directly to Hall." [58] at 14. But Holmes implicitly concedes that Hall "delegated" the task of reviewing mail "to subordinates." *See id.* at 15. The evidence bears that out. Hall, who oversaw about 1,000 employees, testified that she delegated mail-review duties to her staff. [57-11] at 8, 21–22, 40–41, 44–45. Hall thus denied ever seeing Holmes's letter. *Id.* at 40, 44; *see also id.* at 20 (stating that she did not remember Holmes). Holmes's evidence that she addressed a letter to Hall does not show that Hall "affirmatively participate[d]" in Holmes's overdetention. *Crittindon*, 37 F.4th at 188 (cleaned up).

As for Mallett, Holmes presents no evidence of direct participation. *See* [58] at 14. Holmes argues only that "Mallett acknowledged that MDOC received her jail-time allotment form." *Id.* (citing [57-10] at 37). But the question is not whether

*someone* at MDOC received that form; it is whether Mallett did. Holmes cites no evidence that he did. In fact, Holmes's record citation points to Mallett's testimony that he had "no idea" which MDOC staffer—whose initials were "DE"—scanned Holmes's form into the system. [57-10] at 37. Holmes has failed to establish Mallett's direct participation.

Holmes presents no evidence of either Defendant's direct participation in her overdetention. So her final theory fails.

*      *      *

In sum, Holmes fails to present evidence that either Hall or Mallett is personally liable for her overdetention. Each Defendant is entitled to qualified immunity.

IV.    Conclusion

The Court has considered all arguments. Those not addressed would not have changed the outcome. For the stated reasons, the Court GRANTS Defendants Pelicia Hall and Jeworski Mallett's [55] Motion for Summary Judgment. The Court will enter a separate final judgment consistent with this Order.

SO ORDERED, this 18th day of September, 2024.

s/ *Kristi H. Johnson*
UNITED STATES DISTRICT JUDGE